UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

COMMONWEALTH OF MASSACHUSETTS,

Plaintiff,

v.

THE LANE CONSTRUCTION
CORPORATION,

Defendant.

Case No. 19-10578 – MBB

**CONSENT DECREE**

WHEREAS, The Lane Construction Corporation ("Lane") owns and formerly operated a construction sand and gravel mining and asphalt manufacturing facility at 1 Willow Hill Road, Lee, Massachusetts (the "Facility");

WHEREAS, the Commonwealth of Massachusetts ("Commonwealth") (jointly with Lane, the "Parties" and each individually, a "Party"), acting through the Office of the Attorney General ("Attorney General's Office"), alleges in its Complaint that Lane discharged native washed stone that constitutes industrial material ("Industrial Material") and polluted stormwater from the Facility into the Housatonic River, in violation of the Federal Clean Water Act, 33 U.S.C. § 1311(a), the Massachusetts Wetlands Protection Act, G.L. c. 131, § 40, the Massachusetts Clean Waters Act, G.L. c. 21, § 43(2), and their respective implementing regulations;

WHEREAS, on July 24, 2018, the Attorney General's Office provided notice of the alleged violations and of the Commonwealth's intention to file suit against Lane to the

Administrator of the United States Environmental Protection Agency ("EPA"); the Administrator of EPA Region I; the Massachusetts Department of Environmental Protection ("MassDEP"); and to Lane, pursuant to Section 505 of the Federal Clean Water Act, 33 U.S.C. § 1365 (the "Notice Letter");

WHEREAS, on March 26, 2019, the Commonwealth filed a Complaint against Lane in the United States District Court, District of Massachusetts;

WHEREAS, following receipt of the July 24, 2018 Notice, Lane has taken certain steps, including retaining GZA GeoEnvironmental, Inc., a third-party consulting firm, to investigate the alleged violations and to develop and implement a plan to stabilize, protect, and restore a portion of the banks of the Housatonic River that abuts the Facility and to properly control and monitor stormwater pollutant discharges from the Facility;

WHEREAS, the Attorney General's Office did not object to Lane's selection of GZA GeoEnvironmental, Inc. as a consultant to address the alleged violations;

WHEREAS, prior to the entry of this Consent Decree, GZA GeoEnvironmental, Inc. developed the Restoration Plan (as defined in paragraph 16 of this Consent Decree), and assisted Lane in modelling stormwater flows, evaluating the potential for fugitive discharges, and developing a revised sampling protocol for its stormwater outfalls;

WHEREAS, Lane has provided the Restoration Plan for review and comment and incorporation into this Consent Decree;

WHEREAS, Lane anticipates that these steps, together with implementation of the measures set forth herein and in Lane's updated Stormwater Pollution Prevention Plan ("SWPPP") for the Facility, will enable it to comply with the requirements of the Federal Clean

Water Act, the Massachusetts Wetlands Protection Act, and the Massachusetts Clean Waters Act;

WHEREAS, Lane, for reasons unrelated to this action by the Commonwealth, has divested its Plants & Paving line of business, of which the Facility was a part, and intends to terminate its ownership of the Facility no later than December 31, 2019.

WHEREAS, Lane does not admit, nor has there been an adjudication of, any facts, interpretations of law, or liability to the Commonwealth arising out of the transactions, conditions, operations, or occurrences alleged in the Complaint;

WHEREAS, this Consent Decree was entered into voluntarily by the parties as a settlement of disputed matters, and neither this Consent Decree nor any action taken pursuant to it shall be construed as an admission of any fact or liability, either expressed or implied;

WHEREAS, the Commonwealth and Lane have reached an agreement to resolve the allegations made by the Commonwealth; and

WHEREAS, after this Consent Decree is executed by the Parties and before it is entered by this Court, this Consent Decree shall be submitted to the Attorney General of the United States and the Administrator of the United States Environmental Protection Agency for the 45-day statutory review period, pursuant to 33 U.S.C. § 1365(c).

NOW THEREFORE, based on the Joint Motion of the Parties for Entry of this Consent Decree and before taking any testimony and without the adjudication of any issue of fact or law except as provided in Section I (Jurisdiction and Venue), it is **ADJUDGED, ORDERED, AND DECREED** as follows:

## I. JURISDICTION AND VENUE

1.      This Court has jurisdiction over the parties and the subject matter of this action pursuant to Section 505(a)(1)(A) of the Federal Clean Water Act, 33 U.S.C. § 1365(a)(1)(A), and 28 U.S.C. § 1331 (an action arising under the laws of the United States) and 28 U.S.C. § 1367 (supplemental jurisdiction over related state claims).

2.      Venue is proper in the District of Massachusetts pursuant to Section 505(c)(1) of the Federal Clean Water Act, 33 U.S.C. § 1365(c)(1). For purposes of this Consent Decree, or any action to enforce this Consent Decree, Lane consents to the Court's jurisdiction over Lane and over this Consent Decree and any such action to enforce it and consents to venue in this judicial district.

3.      For purposes of this Consent Decree, the Complaint alleges facts that, if proven, would constitute good and sufficient grounds for the relief set forth in this Consent Decree.

## II. PARTIES BOUND

4.      This Consent Decree shall constitute a binding agreement between the Parties, and Lane consents to its entry as a final judgment by the Court and waives all rights of appeal as to the jurisdiction, venue, or terms of the Consent Decree upon its entry on the docket, but specifically reserves its rights as set forth in paragraphs 25 and 29.

5.      The provisions of this Consent Decree shall apply to and bind Lane, and any person or entity acting by, for, or through Lane, including Lane's managers, directors, officers, supervisors, employees, agents, servants, attorneys-in-fact, successors, and assigns and those persons in active concert or participation with Lane who receive notice of this Consent Decree.

6.      Lane shall provide a true copy of this Consent Decree to all of its managers, directors, officers, supervisors, employees, and agents whose duties might include compliance with any provision of this Consent Decree. Lane shall also provide a copy of this Consent Decree to any

4

contractor retained to perform work required under this Consent Decree and shall condition any such contract on the contractor's performance of the work in compliance with the terms of this Consent Decree.

7.      No change or transfer in ownership, management, or operation of the Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Lane or its managers, officers, directors, agents, and/or servants of any obligation under this Consent Decree. Until such time as the Attorney General's Office has issued a Certificate of Compliance, Lane shall, at least thirty (30) days prior to any change or transfer of ownership, management, or operation of any portion of the Facility, provide a copy of this Consent Decree to the proposed transferee or new manager or operator and shall simultaneously provide written notice of the prospective change or transfer in ownership, management, or operation of the Facility, together with a copy of the proposed written change or transfer agreement, to the Attorney General's Office in accordance with Section XII (Notices) of this Consent Decree. Any attempt to change or transfer ownership, management, or operation of the Facility without complying with this Paragraph shall constitute a violation of this Consent Decree.

8.      Lane shall not violate this Consent Decree, and Lane shall not allow its officers, directors, agents, servants, attorneys-in-fact, employees, successors, assigns, or contractors to violate this Consent Decree. In any action to enforce this Consent Decree, Lane shall not raise as a defense the failure by any of its managers, directors, officers, supervisors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

9.      In addition to any relief specifically provided in this Consent Decree, Lane understands and agrees that violations of this Consent Decree may be punishable by contempt.

## III. EFFECTIVE DATE

10.     The effective date of this Consent Decree ("Effective Date") shall be when the Court enters the Consent Decree on the docket.

## IV. PAYMENTS

11.     Within fifteen (15) days of the Effective Date, Lane shall pay to the Commonwealth a civil penalty in the sum of twenty-five thousand dollars ($25,000). The payment of the civil penalty shall be made by certified, treasurer's, or bank check payable to the "Commonwealth of Massachusetts" and delivered to the Office of the Attorney General, Environmental Protection Division, One Ashburton Place, Boston, Massachusetts, 02108, to the attention of Nora J. Chorover, Special Assistant Attorney General. The check shall include on its face the following information: Commonwealth v. Lane Construction Corporation – Civil Penalty.

12.     Within fifteen (15) days of the Effective Date, Lane shall make a payment of twenty-five thousand dollars ($25,000) to Greenagers, a Massachusetts non-profit organization that provides employment and volunteer opportunities for teens and young adults in the fields of conservation, sustainable farming, and environmental leadership (the "Greenagers Payment"). The Greenagers Payment shall be used by Greenagers to fund a project or projects in the vicinity of, but not at, the Facility, that is designed to improve or protect water quality in the Housatonic River. The Greenagers Payment shall be made by certified check, treasurer's check or bank check and sent to Will Conklin, Executive Director, Greenagers, 62 Undermountain Road, PO Box 157, South Egremont, MA 01258. Evidence of Lane's payment to Greenagers shall be provided by Lane to the Commonwealth.

13.     Pursuant to Section 505(d) of the Federal Clean Water Act, Lane shall reimburse the Commonwealth in the amount of fifty thousand dollars ($50,000) to defray the Attorney

General Office's costs, including attorney fees, incurred in connection with its work on this matter. The reimbursement of costs, including attorney fees, shall be made within fifteen (15) days of entry of this Consent Decree, and shall be made by certified, treasurer's, or bank check payable to the "Commonwealth of Massachusetts" and delivered to the Office of the Attorney General, Environmental Protection Division, One Ashburton Place, Boston, Massachusetts, 02108, to the attention of Nora J. Chorover, Special Assistant Attorney General. The check shall include on its face the following information: Commonwealth v. Lane Construction Corporation – Costs Including Attorney Fees. Nothing in this Paragraph or in this Consent Decree shall restrict the Commonwealth's right to seek additional compensation for fees or costs that it incurs to address Lane's noncompliance with the terms of this Consent Decree.

## V. INJUNCTIVE RELIEF

14.     Lane agrees to operate the Facility in compliance with the applicable requirements of the United States Environmental Protection Agency's National Pollutant Discharge Elimination System ("NPDES") Multi-Sector General Permit for Stormwater Discharges Associated with Industrial Activity, including any amendments thereto (the "Stormwater Permit"), and with the Federal Clean Water Act, the Massachusetts Wetlands Protection Act, the Massachusetts Clean Waters Act, and their respective implementing regulations.

15.     Movement and Storage of Industrial Material. As of the Effective Date, Lane will not mobilize or store Industrial Material in a manner that results in Industrial Materials spilling over into the Housatonic River or onto the area between the top of the stormwater control berm and the Housatonic River ("Riverbank Area") or in a manner that results in sedimentation or destabilization of the Riverbank Area, except to the extent that:

    a.    such mobilization is necessary to implement the Restoration Plan (as hereinafter defined);

    b.    such mobilization is consistent with any applicable governmental approvals for the Restoration Plan; and

    c.    Lane has given the Attorney General's Office prior notice that the mobilization or storage of Industrial Material during Lane's implementation of the Restoration Plan may result in Industrial Material spilling over to the Housatonic River or Riverbank Area and a narrative description of the estimated nature and extent of such spillage.

16.    <u>Riverbank Stabilization and Restoration</u>. By August 30, 2019, Lane (through its consultants and contractors) will complete implementation of a plan to stabilize and protect the Riverbank Area ("Restoration Plan"), as developed by GZA, and attached hereto as Exhibit A.

    a.    Lane will ensure that GZA supervises the implementation of the Restoration Plan.

    b.    Lane will obtain any necessary governmental approvals, including any necessary approvals from the Town of Lee's Conservation Commission, that are required for implementation of the Restoration Plan.

    c.    Should the Town of Lee's Conservation Commission or any other governmental entity request that a reasonable or non-material modification be made to the Restoration Plan ("Requested Modification"), then:

        i.    Lane shall promptly provide Notice to the Attorney General's Office of the Requested Modification; and

        ii.    Lane may make the Requested Modification only

1. upon receipt of Notice from the Attorney General's Office that the Attorney General's Office has no objection to the modification being made; or

2. no sooner than 30 days after providing the Attorney General's Office of Notice pursuant to paragraph 16(c)(i), provided the Attorney General's Office has not responded to the Notice.

Nothing in this paragraph shall prevent Lane from taking any action otherwise required by law.

d. Lane will submit written notice (the "Completion Notice") to the Attorney General's Office pursuant to Section XI (Notices) when it believes that it has completed implementation of the Restoration Plan and will allow the Attorney General's Office and/or its consultants to enter the Lane Facility in accordance with Section VI (Facility Access and Submission of Records) to inspect the implementation.

e. After submittal of the Completion Notice, the Attorney General's Office will either issue Lane a certification that Lane has substantially completed the Restoration Plan ("Certificate of Compliance") in the form attached as Exhibit B, or, for good cause, may notify Lane in writing that it disagrees that the Restoration Plan has been completed, stating the basis of its disagreement with specificity. The Attorney General's Office shall make its best effort to respond to Lane's Completion Notice within 21 days of transmittal.

9

17.    <u>Industrial Stormwater</u>

    a.    *Improved Pollutant Reduction Measures.* Lane will direct and properly control stormwater at its Facility to minimize pollutants in stormwater discharges from the Facility. Lane will prevent unpermitted fugitive discharges to the Housatonic River from locations other than outfall 001 or any other outfall(s) that have been or may be added to the SWPPP.

    b.    *Improved Compliance Monitoring.* As of the Effective Date, Lane will ensure representative sampling of stormwater discharged from the Facility by:

        i.    Monitoring its stormwater discharges in accordance with applicable provisions of Section 6 of the Stormwater Permit, and Appendix B, Section B-10 of the Stormwater Permit and the Outfall 002 Sampling Plan attached hereto as Exhibit C;

        ii.    Following the procedures set forth in EPA's Industrial Stormwater Monitoring and Sampling Guide (March 2009), or any applicable updated EPA guidance or industrial stormwater monitoring and sampling requirements;

        iii.    Performing quarterly monitoring during each annual quarter that this Consent Decree is in effect; and

        iv.    Preparing video recordings of the sampling event for each of the first three quarters after the Effective Date, and providing the Attorney General's Office with copies of such video recordings in accordance with Section XI (Notices) below. Within five (5) days of the Effective Date, Lane shall provide the Attorney General's Office

with the video recording and results for the sampling event in the first quarter of 2019. The video recordings shall include an accurate record of the time and date on which they were recorded. Each video shall make clear and evident, through visual imagery or, if it is not practicable to use visual imagery, through clearly spoken words:

    (a)   the date and time on which it was recorded;

    (b)   the location or locations at which it was recorded;

    (c)   the persons present during the recording;

    (d)   the location of the pipe or conduit being sampled from;

    (e)   the manner in which each sample is taken; and

    (f)   the sample or samples taken.

If the video imagery is insufficient to verify items (a)-(f) above, then the Attorney General's Office shall have the right to be present during or require the recording of another representative sampling event during one of the next two calendar quarters. If the Attorney General's Office chooses to be present during the recording pursuant to this paragraph, it shall be at a time mutually agreed upon by Lane and the Attorney General's Office.

## VI. FACILITY ACCESS AND SUBMISSION OF RECORDS

18.    For purposes of this Section (VI) of the Consent Decree, the term "Relevant Portions" as it pertains to portions of the Facility, means any area from which stormwater runoff that reaches waters of the United States (as defined in 33 C.F.R. § 328.3(a)) is generated, and the western edge of the Facility that borders the Housatonic River.

11

19.     Until December 31, 2019,  Lane shall permit the Attorney General's Office to visit Relevant Portions of the Facility during normal daylight business hours, provided that the Attorney General's Office provide at least twenty-four (24) hours of prior notice. During any site visit, the Attorney General's Office shall have access to and permission to copy any documentation required to be kept on site by the Stormwater Permit, and may collect samples and take photos of Relevant Portions of the Facility.

20.     Through December 31, 2019, Lane shall provide the Attorney General's Office with the following documents, by emailing them to nora.chorover@mass.gov:

a.     Copies of all documents that Lane submits to EPA, the Commonwealth (including MassDEP), and/or the Towns of Lee or Lenox concerning Lane's compliance with the Massachusetts Wetlands Protection Act at the Facility or concerning the Facility's stormwater discharges, including but not limited to all documents and reports submitted as required by the Stormwater Permit; Such documents and reports shall be sent to the Attorney General's Office on the same day that they are submitted to the governmental entity;

b.     All maintenance records for its stormwater pollution control systems. Such maintenance records will be provided within five (5) business days of Lane's receipt of a written request by the Attorney General's Office;

c.     Timely written notice of any planned or completed changes to the company's stormwater control measures, with dates of anticipated or completed changes;

d.     Current copies of the company's SWPPP within five (5) business days of a request by the Attorney General's Office;

e.    Laboratory reports and analytical results of stormwater sampling performed by or for Lane, within five (5) business days of receiving the reports; and

f.    Video recordings of four consecutive quarterly monitoring events prepared in accordance with Paragraph 17 (b)(iv), above, at the same time that the corresponding laboratory reports and analytical results for the samples are provided (see Section 20(e), above). All Quarterly Visual Inspection Forms and Routine Facility Inspection Forms shall be submitted to the Attorney General's Office within thirty (30) days of their completion.

21.    Any information provided by Lane or acquired by the Attorney General's Office pursuant to this Consent Decree may be used by the Commonwealth in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

22.    This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the Commonwealth or any of its branches, departments, agencies, or offices pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Lane to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## VIII. INTEREST AND COLLECTIONS

23.    If any payment required pursuant to this Consent Decree is late or not made, Lane shall pay interest on any overdue amount for the period of such nonpayment at the rate of twelve percent (12%) pursuant to M.G.L. c. 231, § 6B, computed monthly, and shall pay all expenses associated with collection by the Commonwealth of the unpaid amounts and interest for any period of nonpayment after the payment obligation becomes due, including reasonable attorneys' fees.

## IX. EFFECT OF CONSENT DECREE

24.    Upon compliance with the requirements of this Consent Decree, (a) this Consent Decree shall resolve Lane's liability for the specific legal claims alleged against it in the Complaint that arose at least 45 days prior to the entry of this Consent Decree, and (b) the Commonwealth shall release Lane for liability for the specific legal claims alleged against Lane in the Complaint that arose at least 45 days prior to the entry of this Consent Decree. Notwithstanding the foregoing, the Commonwealth expressly reserves all claims for injunctive relief for violations of all of the statutes and regulations referred to in this Consent Decree, whether related to the specific legal claims resolved by this Consent Decree or otherwise, except as expressly provided in Paragraph 15, above.

25.    Nothing in this Consent Decree (a) shall bar any action by the Commonwealth on any legal claim not specifically pleaded in the Complaint or for any violations not revealed to the Commonwealth; (b) shall be deemed to excuse non-compliance by Lane or any of the persons or entities otherwise bound by this Consent Decree with any law or regulation; or (c) shall preclude a separate or ancillary action by the Commonwealth to enforce the terms of this Consent Decree or any permit or other approval issued by MassDEP or EPA relative to the Facility. Lane reserves its right to contest actions taken by the Commonwealth pursuant to this paragraph.

26.    This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations. This Consent Decree does, however, provide for the manner and timeline in which Lane shall proceed to address the conditions and operations referenced in the Complaint, and in the Attorney General's Office's initial notice letter of July 24, 2018. The Commonwealth shall not initiate action against Lane in this Court for any of the violations referenced by the Attorney General's Office in the Notice Letter or Complaint, provided

14

that: (a) the Attorney General's Office determines in its sole discretion that Lane is in material compliance with and has maintained consistent compliance with this Consent Decree, and (b) Lane has addressed or is addressing the violation pursuant to this Consent Decree.

27. Lane is responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits, and Lane's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The Commonwealth does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Lane's compliance with any aspect of this Consent Decree will result in compliance with provisions any federal, state, or local law, regulation, or permit.

## X. DISPUTE RESOLUTION

28. If the Attorney General's Office has determined that Lane is in violation of this Consent Decree, the Attorney General's Office may request in writing that Lane meet and confer within seven (7) calendar days of receiving written notification of such request from the Attorney General's Office, for the purpose of determining whether a violation has occurred and developing a mutually agreed upon plan, including implementation dates, to resolve the dispute. If the parties fail to meet and confer, or the meet-and-confer does not resolve the dispute and result in a mutually agreed upon plan, then the Commonwealth shall be entitled to pursue applicable remedies, including filing a motion for available judicial relief from the District Court of Massachusetts. Nothing in this paragraph prevents the Commonwealth from seeking judicial relief without first requesting that Lane meet and confer if the alleged violation constitutes an emergency condition or poses an imminent threat to human health or the environment.

29. If either Party wishes to resolve a dispute or difference concerning Lane's implementation of its obligations under the Restoration Plan (Exhibit A) or the Outfall 002 Sampling Plan (Exhibit C), that Party may request in writing that the Parties meet to explore resolution of the dispute or difference. The Parties agree to engage in good faith negotiations in an effort to resolve such disputes or differences. Nothing in this paragraph is meant to restrict the Commonwealth's exercise of its authority under paragraphs 25 or 27.

## XI. MISCELLANEOUS

30. Lane understands and agrees that, pursuant to 11 U.S.C. § 523(a)(7), the civil penalty and any other costs or sums that Lane may be required to pay under this Consent Decree are not subject to discharge in any bankruptcy.

31. Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a party to this Consent Decree.

32. Lane shall pay all expenses, including reasonable attorneys' fees and costs, incurred by the Commonwealth in the enforcement of this Consent Decree.

33. The titles in this Consent Decree have no independent legal significance and are used merely for the convenience of the Parties.

34. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or State or Federal holiday, the period shall run until the close of business of the next business day.

35. Signatures of the Parties transmitted by scanning and email are binding.

## XII. NOTICES

36. Unless otherwise specified in this Consent Decree, notices and submissions required by this Consent Decree shall be made in writing by email to the following addresses:

16

For the Attorney General's Office and the Commonwealth:

Nora J. Chorover
Special Assistant Attorney General
Environmental Protection Division
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
Nora.chorover@mass.gov

For Lane:

David Bondanza
Senior Corporate Attorney
The Lane Construction Corporation
90 Fieldstone Court
Cheshire, CT 06410
dbondanza@laneconstruct.com

For Correspondence to Lane, a Copy to:

Earl W. Phillips, Jr.
Emilee Mooney Scott
Robinson & Cole LLP
280 Trumbull Street
Hartford, Connecticut 06103
ephillips@rc.com
escott@rc.com

or to such other place or to the attention of such other individual as a Party may from time to time designate by written notice to the other Party to this Consent Decree.

37. If the Court declines to enter this Consent Decree on any ground except one related to form, this Consent Decree is voidable at the option of either Party within fourteen (14) days of the Court's decision. If, on the other hand, the Court determines that substantive modifications to this Consent Decree are necessary prior to the Court's entry of it, the Parties shall enter into good faith negotiations to discuss the modifications, and this Consent Decree shall be void unless the

17

Commonwealth and Lane agree otherwise in writing within fourteen (14) days of the Court's decision.

## XIII. INTEGRATION

38.     Except as expressly set forth in this Consent Decree, this Consent Decree sets forth all of the obligations of the Parties and represents the complete and exclusive statement of the Parties with respect to the terms of the settlement agreement embodied by this Consent Decree; any other representations, communications or agreements by or between the Parties shall have no force and effect.

## XIV. MODIFICATION

39.     The terms of this Consent Decree may be modified only by a subsequent written agreement signed by the Parties. Where the modification constitutes a material change to any term of this Consent Decree, it shall be effective only by written approval of the Parties and the approval of the Court. The Commonwealth's decision to extend a deadline in this Consent Decree shall not constitute a material change for purposes of this Paragraph.

## XV. AUTHORITY OF SIGNATORY

40.     The person signing this Consent Decree on behalf of Lane acknowledges: (a) that he or she has personally read and understands each of the numbered Paragraphs of this Consent Decree, including any Appendices attached to it; (b) that, to the extent necessary, Lane's managers, directors, officers, and shareholders have consented to Lane entering into this Consent Decree and to its entry as a Final Judgment; and (c) that he or she is authorized to sign and bind Lane to the terms of this Consent Decree.

## XVI. RETENTION OF JURISDICTION

41.     The Court shall retain jurisdiction over this case for purposes of resolving disputes that arise under this Consent Decree, entering orders modifying this Consent Decree, or effectuating or enforcing compliance with the terms of this Consent Decree.

## XVII. FINAL JUDGMENT

42.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a Final Judgment of the Court.

Dated: 3/26/19

Office of the Attorney General

By:

Dated: 3/20/2019

Lane Construction Corporation

By:     **Mark A. Schiller**
        **Exec VP & COO Construction**

IT IS SO ORDERED. JUDGMENT is hereby entered in accordance with the foregoing.

By the Court:

United States District Court

Dated: May 14, 2019

DRAFT--CONFIDENTIAL SETTLEMENT COMMUNICATIONS

February 4, 2019
04.0190873.01
Slope Restoration Plan, Lane Facility, Lee, MA

## Proposed Slope Restoration Plan

**Location:** The Lane Construction Corporation ("Lane"), Lenoxdale Facility, 1 Willow Hill Road, Lee, MA ("Property")

**Responsible Party :** Lane

**Project Objective and Context:** This Slope Restoration Plan ("Plan") sets forth the third and final step in a sequence of activities to observe and evaluate potential impacts from Lane's operations to the Housatonic River and, as and if indicated, propose a restoration plan for the Bank resource as defined in 310 CMR 10.54 ("Bank"), the water-side of the stormwater control berm between the top of the berm to the Bank (collectively with the Bank, the "Slope"), and Land Under Water Bodies and Waterways as defined in 310 CMR 10.56 ("LUWW") forming the western boundary of the Property. These activities consist of three discrete components: 1. a site walk and field observations ("Field Observations") described as Task 1(c) of the October 5, 2018 scope of services letter from GZA ("Scope Letter") focused on those areas of the Property adjoining or proximate to the Housatonic River or its banks to identify areas of potential impact by the historic placement or release of washed stone on the Slope and/or LUWW; 2. an environmental evaluation ("Evaluation") of those areas of the Property proximate to the Housatonic River or its banks, identified during the Field Observation, where washed stone from Lane's operations may have come to rest on the Slope and/or LUWW to assess whether, from an environmental impact versus benefit perspective, the observed conditions should remain as observed and/or be the subject of proposed restoration activities, described as Task 1(d) of the Scope Letter; and 3. for those areas determined during the Evaluation step to be impacted and appropriate for restoration, to propose a restoration plan ("Restoration Plan").

The status of efforts to advance each of these objectives is provided below:

1. FIELD OBSERVATIONS – These efforts were summarized in § 2.2 of the Shoreline Assessment. This work was performed on October 31, 2018 and considered an area of approximately 5,770 linear feet and 321,311 square feet (SF), or approximately seven acres, along the Housatonic River within the Property. This area is shown in red on the attached Figures 1-3. This effort allowed GZA to identify areas where washed stone was on or over the stormwater control berm and identify these areas for further evaluation per component 2, as follows.

2. EVALUATION - As noted above, the Field Observations allowed GZA to 1) identify certain areas where washed stone was observed on top of the stormwater control berm; and 2) identify more precisely the areas where restoration was indicated. The areas identified for this evaluation include three (3) discreet locations shown on Figures 4-6 and labeled as Focus Areas 1-3 (identified by a yellow polygon on each figure).

The evaluation performed of these areas was undertaken in a manner consistent with the methodology described in the Scope Letter. Among other things, GZA evaluated the environmental impact (if any) of the observed washed stone, the general vegetative composition, the vegetative maturity and stability,

DRAFT--CONFIDENTIAL SETTLEMENT COMMUNICATIONS

February 4, 2019
04.0190873.01
Slope Restoration Plan, Lane Facility, Lee, MA

the apparent slope or bank stability, the erosion potential, as well as the options to enhance the existing conditions and the potential impacts and benefits of such options.

As discussed further in the November 30, 2018 Shoreline Assessment Report, GZA identified the following locations where washed stone appeared to have been placed on top of the stormwater control berm or on the Slope:

- Two locations (Focus Areas 2 on Figure 5 and Focus Area 3 on Figure 6) were identified where washed stone had been placed on the earthen berm as a means of soil stabilization. GZA reviewed each area where washed stone had been placed, and the area downslope from each such area, to observe if the washed stone had migrated beyond the berm and potentially entered the Bank or LUWW resource. Focus Areas 2 and 3 covered an area of approximately 40 feet by 20 feet, or 800 SF, for each area (approximately 1,600 SF collectively). Focus Areas 2 and 3 each had a small amount of washed stone on the westerly facing Slope, but GZA did not observe washed stone in the Bank or LUWW resource. GZA did not observe evidence that either of these two washed stone areas are resulting in impacts to the Bank or the LUWW. Therefore, GZA does not recommend any disturbance or restoration of the area containing washed stone in these areas. See Shoreline Assessment Report, § 2.2(4).

- Focus Area 1 includes two washed stone stockpiles that have historically been located immediately adjacent to the stormwater berm, and portions were observed upon the stormwater berm. GZA reviewed the Slope and observed washed stone that had come to rest on the water side of the berm. The washed stone was present, at differing densities, over an area that was approximately 80 linear feet parallel to the river and approximately 35 feet wide on the Slope or 2,800 SF.

  o The southerly stockpile is comprised of 3/8" washed stone. GZA observed that some 3/8" washed stone material was on the Slope downgradient of the stockpile; but on close evaluation noted that woody and herbaceous vegetation was growing throughout the area of 3/8" washed stone. GZA concluded that vegetative growth was not suppressed by the 3/8" washed stone, and GZA recommends that the 3/8" washed stone remain in place due to its observed stable state on the Slope.

  o The northerly stockpile was comprised of 3/4" washed stone. GZA observed that the 3/4" washed stone material appears to have suppressed vegetative grown in an area approximately 20 feet wide by 35 feet long or 700 SF. GZA has identified this area as the Restoration Area and this location is depicted on Figure 4 as a gray shaded polygon with dimensions shown.

- Observations of the LUWW revealed small amount of washed stone below the water line (as it existed at the time of the field visit) along approximately 80 linear feet of the river (Focus Area 1 on Figure 4). GZA concluded that such washed stone material was native and also present in the Bank area, but not in the LUWW area. See Shoreline Assessment Report, § 2.2(3). GZA also concluded that washed stone is not negatively impacting the Bank resource, because the river substrate remains available and for use by aquatic wildlife, and the washed stone may provide

DRAFT--CONFIDENTIAL SETTLEMENT COMMUNICATIONS

<div align="right">
February 4, 2019<br>
04.0190873.01<br>
Slope Restoration Plan, Lane Facility, Lee, MA
</div>

shoreline stabilization and/or habitat benefits.  See Shoreline Assessment Report § 2.4.  Any efforts to remove the washed stone present in the Bank resource would disrupt existing, stable conditions, and is therefore not indicated.

3. RESTORATION PLAN: As noted above, a Restoration Area of approximately 700 SF was identified in the evaluation step.  The limits of the restoration will be verified in the field based on absent or sparse vegetative growth in the washed stone area and will be demarcated in the field with surveyors flagging prior to the removal of the washed stone as described at item 2 in the Work Details and Sequence section below.  In developing this restoration plan, GZA considered a range of options and concluded that the below approach was best suited to the observed conditions because it will: 1. allow for removal of the maximum area of washed stone on the Slope while minimizing destabilization of an otherwise stable area; 2. improve the slope stability; 3. restore the vegetative cover for wildlife habitat; and 4. support and improve the functional values of the Bank and LUWW resource.

Based on the above, it is GZA's professional opinion that restoration should proceed as to the Restoration Area by removing the washed stone to the original subgrade soil followed by stabilization of the Slope with an erosion control blanket that will provide stability to the soil surface until the herbaceous seed mix and the woody plantings become established.

**Work Details and Sequence:**

1. Install and stake in place a 12" diameter straw wattle or compost tube device at the toe of the slope and coincident with the mean annual high water line to prevent the inadvertent migration of washed stone down slope into the Bank and LUWW resources.  This device will be maintained in place for one growing season following the completion of the restoration work or until 75% of the restored slope is vegetated;
2. Remove washed stone within the Restoration Area to an estimated depth of 4-12" to the underlying subgrade, which was observed to be a mixture of tan colored soil and washed stone/gravel.  A representative from Lane will be onsite to visually confirm that the subgrade is observed and to direct the removal process so that the washed stone is removed from the Slope;
3. Hand cast 2 lbs. of a Conservation Seed Mix over the 700 SF area and hand rake the seed into the soil to improve seed/soil contact for improved germination;
4. Install a biodegradable erosion control blanket (i.e., jute netting or similar) on the Slope and follow the manufactures recommendations for securing the ends and the placement of staples to secure the blanket to the soil surface; and
5. During the installation of the blankets, install nine (9) woody plantings (Table 1) by cutting an "X" in the blanket fabric and placing the root ball into the exposed subsoil level with the surrounding grade.

This action is being offered voluntarily to support improvements to wetland resources and water quality by increasing vegetative cover for shading of the river and improved wildlife habitat.

**Timetable (est.):** Lane is committed to implementing the slope restoration plan ("Plan") as soon as approved; however, due to the time of year of this proposed Plan, the site conditions are not currently conducive to effectively restoring the Slope in the near term. Therefore, the implementation objective is to have the washed stone removed from the Restoration Area as soon as possible and then seed, install

DRAFT--CONFIDENTIAL SETTLEMENT COMMUNICATIONS

February 4, 2019
04.0190873.01
Slope Restoration Plan, Lane Facility, Lee, MA

erosion control blanket, and install the woody plants in the early spring as recommended by the nursery or seed manufacturer.

***Consideration for Planting:*** If the slope Restoration Area does not receive rain 48 hours before and after seeding and planting of woody vegetation, the Restoration Area should be watered in a manner to promote healthy vegetative growth.

**Table 1: Proposed Native Woody Plantings (700 SF Area)**

| Common Name | Scientific Name | Size/Type | Qty |
|---|---|---|---|
| Pussy Willow | *Salix bicolor* | 2-3 ft/Container | 3 |
| Sweet Fern | *Comptonia peregrina* | 18-24"/Container | 3 |
| Witch Hazel | *Hamamelis virginiana* | 2-3 Ft/Container | 3 |

Figure 2

Match Line

Washed Stone Stockpiles

Outfall 001 (est.)

## Legend

Lane Parcel Boundary Line

Shoreline Assessment Limits

UNLESS SPECIFICALLY STATED BY WRITTEN AGREEMENT, THIS DRAWING IS THE SOLE PROPERTY OF GZA GEOENVIRONMENTAL, INC. (GZA). THE INFORMATION SHOWN ON THE DRAWING IS SOLELY FOR THE USE BY GZA'S CLIENT OR THE CLIENT'S DESIGNATED REPRESENTATIVE FOR THE SPECIFIC PROJECT AND LOCATION IDENTIFIED ON THE DRAWING. THE DRAWING SHALL NOT BE TRANSFERRED, REUSED, COPIED, OR ALTERED IN ANY MANNER FOR USE AT ANY OTHER LOCATION OR FOR ANY OTHER PURPOSE WITHOUT THE PRIOR WRITTEN CONSENT OF GZA, ANY TRANSFER, REUSE, OR MODIFICATION TO THE DRAWING BY THE CLIENT OR OTHERS, WITHOUT THE PRIOR WRITTEN EXPRESS CONSENT OF GZA, WILL BE AT THE USER'S SOLE RISK AND WITHOUT ANY RISK OR LIABILITY TO GZA.

0    200    400    800

SCALE IN FEET

WILLOW HILL ROAD STORMWATER &
WETLANDS SUPPORT SERVICES,
LEE, MA.

LIMITS OF SHORELINE ASSESSMENT PLAN

PREPARED BY:

GZA GeoEnvironmental, Inc.
Engineers and Scientists
www.gza.com

PREPARED FOR:

THE LANE CONSTRUCTION CORPORATION
1 WILLOW HILL RD, LEE, MA.

| PROJ MGR: | DMN | SCALE: 1 In = 400 ft | Service Layer Credits: Source: Esri, DigitalGlobe, GeoEye, Earthstar Geographics, CNES/Airbus DS, USDA, USGS, AeroGRID, IGN, and the GS User Community 2017 Imagery. | FIG/DWG |
| DESIGNED BY: | JRC | | | 1 |
| DATE: 02/04/2019 | | PROJECT NO: 04.0190873.01 | | SHEET NO: 1 OF 6 |



Figure 3
Match Line

Figure 1
Match Line

## Legend

Lane Parcel Boundary Line

Shoreline Assessment Limits

UNLESS SPECIFICALLY STATED BY WRITTEN AGREEMENT, THIS DRAWING IS THE SOLE PROPERTY OF GZA GEOENVIRONMENTAL, INC. (GZA). THE INFORMATION SHOWN ON THE DRAWING IS SOLELY FOR THE USE BY GZA'S CLIENT OR THE CLIENT'S DESIGNATED REPRESENTATIVE FOR THE SPECIFIC PROJECT AND LOCATION IDENTIFIED ON THE DRAWING. THE DRAWING SHALL NOT BE TRANSFERRED, REUSED, COPIED, OR ALTERED IN ANY MANNER FOR USE AT ANY OTHER LOCATION OR FOR ANY OTHER PURPOSE WITHOUT THE PRIOR WRITTEN CONSENT OF GZA, ANY TRANSFER, REUSE, OR MODIFICATION TO THE DRAWING BY THE CLIENT OR OTHERS, WITHOUT THE PRIOR WRITTEN EXPRESS CONSENT OF GZA, WILL BE AT THE USER'S SOLE RISK AND WITHOUT ANY RISK OR LIABILITY TO GZA.

0    200    400        800

SCALE IN FEET

### WILLOW HILL ROAD STORMWATER & WETLANDS SUPPORT SERVICES, LEE, MA.

### LIMITS OF SHORELINE ASSESSMENT PLAN

| PREPARED BY: | PREPARED FOR: |
| --- | --- |
| GZA GeoEnvironmental, Inc. Engineers and Scientists www.gza.com | THE LANE CONSTRUCTION CORPORATION 1 WILLOW HILL RD, LEE, MA. |

| PROJ MGR: | DMN | SCALE: 1 in = 400 ft | Service Layer Credits: Source: Esri, DigitalGlobe, GeoEye, Earthstar Geographics, CNES/Airbus DS, USDA, USGS, AeroGRID, IGN, and the GS User Community 2017 Imagery. | FIG/DWG |
| --- | --- | --- | --- | --- |
| DESIGNED BY: | JRC | | | **2** |
| DATE: 02/04/2019 | | PROJECT NO: 04.0190873.01 | | SHEET NO: 2 OF 6 |

Figure 2
Match Line

**Legend**

☐ Lane Parcel Boundary Line

☐ Shoreline Assessment Limits

UNLESS SPECIFICALLY STATED BY WRITTEN AGREEMENT, THIS DRAWING IS THE SOLE PROPERTY OF GZA GEOENVIRONMENTAL, INC. (GZA). THE INFORMATION SHOWN ON THE DRAWING IS SOLELY FOR THE USE BY GZA'S CLIENT OR THE CLIENT'S DESIGNATED REPRESENTATIVE FOR THE SPECIFIC PROJECT AND LOCATION IDENTIFIED ON THE DRAWING. THE DRAWING SHALL NOT BE TRANSFERRED, REUSED, COPIED, OR ALTERED IN ANY MANNER FOR USE AT ANY OTHER LOCATION OR FOR ANY OTHER PURPOSE WITHOUT THE PRIOR WRITTEN CONSENT OF GZA, ANY TRANSFER, REUSE, OR MODIFICATION TO THE DRAWING BY THE CLIENT OR OTHERS, WITHOUT THE PRIOR WRITTEN EXPRESS CONSENT OF GZA, WILL BE AT THE USER'S SOLE RISK AND WITHOUT ANY RISK OR LIABILITY TO GZA.

0   200   400   800

SCALE IN FEET

**WILLOW HILL ROAD STORMWATER & WETLANDS SUPPORT SERVICES, LEE, MA.**

**LIMITS OF SHORELINE ASSESSMENT PLAN**

PREPARED BY:
GZA GeoEnvironmental, Inc.
Engineers and Scientists
www.gza.com

PREPARED FOR:
THE LANE CONSTRUCTION CORPORATION
1 WILLOW HILL RD, LEE, MA.

| PROJ MGR: | DMN | SCALE: 1 in = 400 ft | Service Layer Credits: Source: Esri, DigitalGlobe, GeoEye, Earthstar Geographics, CNES/Airbus DS, USDA, USGS, AeroGRID, IGN, and the GIS User Community 2017 Imagery. | FIG/DWG |
| DESIGNED BY: | JRC | | | **3** |
| DATE: 02/04/2019 | | PROJECT NO: 04.0190873.01 | | SHEET NO:   3 OF 6 |

LANE FACILITY

35ft
20ft

Slope Restoration Area

Focus Area - 1

## Legend

Slope Restoration Area

Focus Areas

Locus Area

0    50    100    200
SCALE IN FEET

UNLESS SPECIFICALLY STATED BY WRITTEN AGREEMENT, THIS DRAWING IS THE SOLE PROPERTY OF GZA GEOENVIRONMENTAL, INC. (GZA). THE INFORMATION SHOWN ON THE DRAWING IS SOLELY FOR THE USE BY GZA'S CLIENT OR THE CLIENT'S DESIGNATED REPRESENTATIVE FOR THE SPECIFIC PROJECT AND LOCATION IDENTIFIED ON THE DRAWING. THE DRAWING SHALL NOT BE TRANSFERRED, REUSED, COPIED, OR ALTERED IN ANY MANNER FOR USE AT ANY OTHER LOCATION OR FOR ANY OTHER PURPOSE WITHOUT THE PRIOR WRITTEN CONSENT OF GZA. ANY TRANSFER, REUSE, OR MODIFICATION TO THE DRAWING BY THE CLIENT OR OTHERS, WITHOUT THE PRIOR WRITTEN EXPRESS CONSENT OF GZA, WILL BE AT THE USER'S SOLE RISK AND WITHOUT ANY RISK OR LIABILITY TO GZA.

| WILLOW HILL ROAD STORMWATER & WETLANDS SUPPORT SERVICES, LEE, MA. | PREPARED BY: GZA GeoEnvironmental, Inc. Engineers and Scientists www.gza.com | PREPARED FOR: THE LANE CONSTRUCTION CORPORATION 1 WILLOW HILL RD, LEE, MA. | |
| --- | --- | --- | --- |
| SHORELINE ASSESSMENT FOCUS AREAS | PROJ MGR: DMN | SCALE: 1 in = 100 ft | Service Layer Credits: Source: Esri, DigitalGlobe, GeoEye, Earthstar Geographics, CNES/Airbus DS, USDA, USGS, AeroGRID, IGN, and the GIS User Community 2017 imagery. |
| | DESIGNED BY: JRC | | FIG/DWG **4** |
| | DATE: 02/04/2019 | PROJECT NO: 04.0190873.01 | SHEET NO: 4 OF 6 |



Focus Area - 2

LANE FACILITY

Legend

Focus Areas

Locus Area

UNLESS SPECIFICALLY STATED BY WRITTEN AGREEMENT, THIS DRAWING IS THE SOLE PROPERTY OF GZA GEOENVIRONMENTAL, INC. (GZA). THE INFORMATION SHOWN ON THE DRAWING IS SOLELY FOR THE USE BY GZA'S CLIENT OR THE CLIENT'S DESIGNATED REPRESENTATIVE FOR THE SPECIFIC PROJECT AND LOCATION IDENTIFIED ON THE DRAWING. THE DRAWING SHALL NOT BE TRANSFERRED, REUSED, COPIED, OR ALTERED IN ANY MANNER FOR USE AT ANY OTHER LOCATION OR FOR ANY OTHER PURPOSE WITHOUT THE PRIOR WRITTEN CONSENT OF GZA. ANY TRANSFER, REUSE, OR MODIFICATION TO THE DRAWING BY THE CLIENT OR OTHERS, WITHOUT THE PRIOR WRITTEN EXPRESS CONSENT OF GZA, WILL BE AT THE USER'S SOLE RISK AND WITHOUT ANY RISK OR LIABILITY TO GZA.

SCALE IN FEET

0    50    100    200

WILLOW HILL ROAD STORMWATER & WETLANDS SUPPORT SERVICES, LEE, MA.

SHORELINE ASSESSMENT FOCUS AREAS

PREPARED BY:

**GZA** GeoEnvironmental, Inc.
**Engineers and Scientists**
www.gza.com

PREPARED FOR:

THE LANE CONSTRUCTION CORPORATION
1 WILLOW HILL RD, LEE, MA.

| PROJ MGR: | DMN | SCALE: 1 in = 100 ft | Service Layer Credits: Source: Esri, DigitalGlobe, GeoEye, Earthstar Geographics, CNES/Airbus DS, USDA, USGS, AeroGRID, IGN, and the GIS User Community 2017 Imagery. | FIG/DWG |
|---|---|---|---|---|
| DESIGNED BY: | JRC | | | **5** |
| DATE: 02/04/2019 | | PROJECT NO: 04.0190873.01 | | SHEET NO:   5 OF 6 |

CONFIDENTIAL SETTLEMENT COMMUNICATIONS

LANE FACILITY
Focus Area - 3
N
W
E
S
Legend
Focus Areas
Locus Area

UNLESS SPECIFICALLY STATED BY WRITTEN AGREEMENT, THIS DRAWING IS THE SOLE PROPERTY OF GZA GEOENVIRONMENTAL, INC. (GZA). THE INFORMATION SHOWN ON THE DRAWING IS SOLELY FOR THE USE BY GZA'S CLIENT OR THE CLIENT'S DESIGNATED REPRESENTATIVE FOR THE SPECIFIC PROJECT AND LOCATION IDENTIFIED ON THE DRAWING. THE DRAWING SHALL NOT BE TRANSFERRED, REUSED, COPIED, OR ALTERED IN ANY MANNER FOR USE AT ANY OTHER LOCATION OR FOR ANY OTHER PURPOSE WITHOUT THE PRIOR WRITTEN CONSENT OF GZA. ANY TRANSFER, REUSE, OR MODIFICATION TO THE DRAWING BY THE CLIENT OR OTHERS, WITHOUT THE PRIOR WRITTEN EXPRESS CONSENT OF GZA, WILL BE AT THE USER'S SOLE RISK AND WITHOUT ANY RISK OR LIABILITY TO GZA.

0 50 100 200
SCALE IN FEET

WILLOW HILL ROAD STORMWATER & WETLANDS SUPPORT SERVICES, LEE, MA.

PREPARED BY:
GZA GeoEnvironmental, Inc.
Engineers and Scientists
www.gza.com

PREPARED FOR:
THE LANE CONSTRUCTION CORPORATION
1 WILLOW HILL RD, LEE, MA.

SHORELINE ASSESSMENT FOCUS AREAS

PROJ MGR: DMN
DESIGNED BY: JRC
DATE: 02/04/2019
SCALE: 1 in = 100 ft
PROJECT NO: 04.0190873.01

Service Layer Credits: Source: Esri, DigitalGlobe, GeoEye, Earthstar Geographics, CNES/Airbus DS, USDA, USGS, AeroGRID, IGN, and the GIS User Community 2017 Imagery.

FIG/DWG
6
SHEET NO: 6 OF 6

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

COMMONWEALTH OF MASSACHUSETTS,

Plaintiff,

v.

THE LANE CONSTRUCTION CORPORATION,

Defendant.

Case No.

## CERTIFICATE OF COMPLIANCE

WHEREAS, The Lane Construction Corporation ("Lane") owns and formerly operated a construction sand and gravel mining and asphalt manufacturing facility at 1 Willow Hill Road, Lee, Massachusetts (the "Facility");

WHEREAS, The Commonwealth of Massachusetts ("Commonwealth") (collectively with Lane, the "Parties" and each individually, a "Party"), acting through the Office of the Attorney General ("Attorney General"), entered into a consent decree on [DATE] (the "Consent Decree") as a settlement of the above-captioned matter;

WHEREAS, pursuant to Paragraph 16 of the Consent Decree, Lane has implemented the Restoration Plan and has provided the Attorney General with a Notice of Completion;

WHEREAS, after opportunity for inspection, the Attorney General agrees that the Restoration Plan has been completed to the satisfaction of the Commonwealth;

NOW THEREFORE, the Attorney General hereby issues this Certificate of Compliance to confirm that the Restoration Plan has been completed in compliance with the Consent Decree.

Dated: _____

_____

Office of the Attorney General

By:

DRAFT—CONFIDENTIAL SETTLEMENT COMMUNICATION

---

**Stormwater Sampling Procedure for Lenoxdale Plant Outfall 2**

---

### POSITION IN CHARGE

Site Foreman

### STORMWATER SAMPLING AND QUALITY IMPROVEMENTS

- Installation of filter fabric wrap to gabion wall located proximate to Outfall 001 and identified as Outfall 002 on the Lenoxdate Plant Stormwater Pollution Prevention Plan (SWPPP).
- Placement of clean aggregate on the operations side of the filter fabric encasing the gabion to armor and stabilize filter fabric.
- Installation of 1' of aluminum gutter capped at both ends installed in parallel to the gabion basket as to prevent concentrating flow

The above improvements will be maintained in accordance with the Maintenance Instructions below.

### SAMPLING LOCATION

The sample shall be collected inside the 1' section of gutter installed on the river side at the lowest elevation of gabion-basket wall at Outfall 2. See Figure below.

### PREPARATION INSTRUCTIONS

- Obtain a chain of custody form, bottle labels and the bottles from the appropriately licensed laboratory for the parameters to be tested, Nitrate plus Nitrite Nitrogen and Total Suspended Solids (TSS).
- Obtain a clear bottle to use for the Quarterly Visual Assessment.
- Store the bottles with a cooler until the collection date.
- During the discharge event, before collecting a sample ensure at least 72 hours have passed since the previous discharge event.
- Monitor the outfall. Once water is discharging from outfall 2, collect a sample within the first 30 minutes.

### OPERATING INSTRUCTIONS

- Collect the sample in the gutter using the clear jar or the bottle that does not contain a preservative. Dip the bottle in the gutter. Use this bottle to carefully pour the water into the bottle with the preservative that will be tested for Nitrate plus Nitrite Nitrogen. Do not overfill.
- Fill the bottle for the TSS testing and for the Quarterly Visual Assessment.
- Dry off the bottles using a clean paper towel.
- Immediately label the bottles for the laboratory and store in the cooler with ice.
- Conduct the Quarterly Visual Assessment on the sample held in the clear bottle and record using the designated form in the SWPPP.
- Bring the bottles to the lab by the end of the next business day. Confirm that the laboratory will perform the tests in advance of the holding limit, 7 days for TSS, 28 days for Nitrate plus Nitrite Nitrogen.
- When delivering the bottles to the laboratory ensure the Chain of Custody is filled out and that the lab reads and records the temperature of the samples upon delivery.
- As soon as the results are received, share with the SWPPP team.

DRAFT—CONFIDENTIAL SETTLEMENT COMMUNICATION

> **Stormwater Sampling Procedure for Lenoxdale Plant Outfall 2**

## MAINTENANCE INSTRUCTIONS

- Geotextile fabric shall be placed to line the inside or operations side of the gabion baskets and will be secured using tie wire or similar. The geotextile fabric will be inspected during the routine inspection and replaced if it becomes plugged or worn.
- The aggregate will be replaced when sediment reached ½ height of the berm.
- The gutter installed at the lowest elevation section of the gabion basket baskets shall be kept free of debris.

## REFERENCE DOCUMENTS

- Lenoxdale Stormwater Pollution Prevention Plan
- EPA Industrial Stormwater Monitoring and Sampling Guide

## RECORDS TO BE RETAINED

- Chain of Custody and Results of Testing
- Discharge Monitoring Reports
- Qualitative Visual Assessments

## POTENTIAL CONSEQUENCES FROM PROCEDURE DEVIATION

Deviating from this procedure may result in the collection of an unrepresentative stormwater sample, a stormwater sample that does not meet testing standards and or the discharge of untreated stormwater.



**Outfall Sampling Collection Plan View – Not to Scale**

Outfall 001 Sampling Location

Gabion Basket

Stairs

Fabric Filter

Embankment

Gutter

Stormwater

Outfall 002 Sampling Location



**U.S. Department of Justice**

Environment and Natural Resources Division

*90-1-24-05017*

*Law and Policy Section*
*P.O. Box 7415*
*Washington, DC 20044*

*Telephone (202) 514-1442*
*Facsimile (202) 514-4231*

May 8, 2019

PROVIDED TO COUNSEL OF RECORD
TO SUBMIT TO THE COURT VIA ECF

Clerk's Office
United States District Court
District of Massachusetts
1 Courthouse Way
Boston, Massachusetts 02210

> Re:    *Commonwealth of Massachusetts v. Lane Construction Corp.* United States
> District Court for the District of Massachusetts; No.1:19-cv-10578

Dear Clerk of the Court,

I am writing to notify you that the United States has reviewed the proposed consent decree in the above-referenced matter and does not object to its entry by this court.

On March 29, 2019, the Citizen Suit Coordinator for the Department of Justice received a copy of the proposed consent decree in the above-referenced case for review pursuant to the Clean Water Act, 33 U.S.C. §1365(c)(3)[1]. This provision provides, in relevant part:

> No consent judgment shall be entered in an action in which the United States is not a party prior to 45 days following the receipt of a copy of the proposed consent judgement by the Attorney General and the Administrator.

---

[1] The term "consent judgment" in the Clean Water Act citizen suit provisions has a broad meaning and encompasses all instruments entered with the consent of the parties that have the effect of resolving any portion of the case. For example, a document stipulating to dismissal of a case of any part thereof is within the scope of this language. Such documents and any associated instruments must be submitted to the United States and the court for review, notwithstanding any provisions purporting to maintain the confidentiality of such materials. The Department monitors citizen suit litigation to review compliance with this requirement.

*See also* 40 C.F.R. § 135.5 (service on Citizen Suit Coordinator in the U.S. Department of Justice).  A settlement that does not undergo this federal review process is at risk of being void.

In its review, the United States seeks to ensure that the proposed consent judgment complies with the requirements of the relevant statute and is consistent with its purposes. *See Local 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 525-56 (1986) (a consent decree should conform with and further the objectives of the law upon which the complaint was based).  For example, if the defendant has been out of compliance with statutory or permit requirements, the proposed consent judgment should require the defendant to come into prompt compliance and should include a civil penalty, enforceable remedies, injunctive relief, and/or a supplemental environmental project (SEP) payment sufficient to deter future violations, or combinations of the above.

The proposed consent decree in this case provides that Defendant shall submit a payment to a non-party organization to be used for a supplemental environmental project ("SEP").  Where a consent judgment provides for the payment of sums to a third party that is to undertake an environmentally beneficial project and/or acquire a property interest that will have environmental benefits, the United States typically requests that the third party provide a letter to the Court and to the United States representing that it is a 501(c)(3) tax exempt entity and that it: (1) has read the proposed consent judgment; (2) will spend any monies it receives under the proposed judgment for the purposes specified in the judgment; (3) will not use any money received under the proposed consent judgment for political lobbying activities; and (4) will submit to the Court, the United States, and the parties a letter describing how the SEP funds were spent.  In a letter attached as Exhibit A, the intended recipient of the SEP funds confirmed that any funds received as a result of the proposed consent decree would be used solely for the purpose outlined in the consent decree and no portion of the funds would be used for political lobbying activities.  The United States believes that the letter will help to ensure that any monies expended under the consent judgment will be used in a manner that furthers the purposes of the Clean Water Act and that is consistent with the law and the public interest.

Given the facts of this case, the United States has no objection to the proposed consent decree.  We accordingly notify the Court.

The United States affirms for the record that it is not bound by this settlement. *See, e.g., Hathorn v. Lovorn*, 457 U.S. 255, 268 n.23 (1982) (Attorney General is not bound by cases to which he is not a party); *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found. Inc.*, 484 U.S. 49, 60 (1987) (explaining that citizen suits are intended to "supplement rather than supplant governmental action"); *Sierra Club v. Electronic Controls Design*, 909 F.2d 1350, 1356 n.8 (9th Cir. 1990) (explaining that the United States is not bound by citizen suit settlements, and may "bring its own enforcement action at any time"); 131 Cong. Rec. S15, 633 (June 13, 1985) (statement of Senator Chafee, on Clean Water Act section 505(c)(3), confirming that the United States is not bound by settlements when it is not a party).  The United States also notes that, if the parties subsequently propose to modify further the consent judgment entered in this case, the parties should so notify the United States, and provide a copy of the proposed modifications, 45 days before the Court enters any such modifications. *See* 33 U.S.C. § 1365(c)(3).

We appreciate the attention of the Court.  Please contact the undersigned at (202) 353-0132 if you have any questions.

Sincerely,


*/s/ Stacy Stoller*
Stacy Stoller, Attorney
U.S. Department of Justice
Environmental and Natural Resources Division
Law and Policy Section
P.O. Box 7415
Washington, D.C., 20044-7415

- 3 -

# Exhibit A

# greenagers

youth | environment | community

May 1, 2019

Citizen Suit Coordinator
Environmental and Natural Resources Division
Law and Policy Section
P.O. Box 4390
Ben Franklin Station
Washington, D.C. 20044-4390

Dear Citizen Suit Coordinator:

Greenagers, Inc. is a 501(c)3 non-profit organization (Tax ID ████████ whose mission is to engage youth in our environment and community through paid work and volunteer opportunities. Our programming consists of:

- Conservation work crews building and maintaining trails and conserved lands in the greater Berkshire region
- Donating organic vegetable gardens to underserved residents
- Conducting environmental education in an after-school setting for middle school students
- Coordinating agricultural apprenticeships and experiences for area youth
- Operating and stewarding April Hill Conservation and Education Center in Egremont, MA.

We have been the stewards of the Housatonic River Walk for over 5 years and have worked on many other water resource and mitigation projects in the Housatonic watershed.

We have read the consent decree, Commonwealth of Massachusetts v. The Lane Construction Corporation, case number 19-10578. We understand that the decree provides funding in the amount of $25,000 for improving and protecting the Housatonic River. We will use these monies only for purposes specified in the proposed consent judgment. We will not use any funds for political lobbying purposes.

We plan to conduct the majority of our work related to this decree in 2020 and will provide a report on this work and all expenditures upon completion. We will submit this report to the Court, the United States, and the parties involved.

**BOARD OF DIRECTORS**
David Sheehan, Chair | Ellen Lahr, Vice-Chair | Cheryl Sieboda, Treasurer | Deb Phillips, Secretary
Lori Levinson | Carissa Mann | Deb Phillips | Peter Whitehead
PO Box 157 South Egremont, MA 01258 | info@greenagers.org | 413 644 9090 | greenagers.org

# greenagers

youth | environment | community

Our proposed work may include, but not be limited to, planting native trees, shrubs, grasses, and sedges to stabilize portions of the riverbank prone to erosion; installing coir fiber logs or similar materials to erodible portions of riverbank; installing public education signage related to storm drains, outfalls, etc.

Thank you for your attention to this matter and feel free to contact me for anything further.

Sincerely,

Will Conklin
Executive Director
Greenagers

BOARD OF DIRECTORS
David Sheehan, Chair | Ellen Lahr, Vice-Chair | Cheryl Sleboda, Treasurer | Deb Phillips, Secretary
Lori Levinson | Carissa Mann | Deb Phillips | Peter Whitehead
PO Box 157 South Egremont, MA 01258 | info@greenagers.org | 413 644 9090 | greenagers.org